

Agreement made and entered into this 31st day of July, 2007, by and between *ACUITY*, A Mutual Insurance Company, Sheboygan, Wisconsin, hereinafter referred to as "the Company" and Nuthak Insurance, LLC of Shelbyville, Indiana, hereinafter referred to as "the Agent."

WITNESSETH:

WHEREAS, the Company appoints Nuthak Insurance, LLC, as an agent, and

WHEREAS, the Agent accepts said appointment;

NOW, THEREFORE, the Company and Agent agree as follows:

### A. Authority of Agent

1. The Agent is an independent contractor, not an employee of the Company and, subject to requirements imposed by law, the terms of this agreement and the underwriting rules and regulations of the Company, is authorized to:
   a. Solicit, receive and transmit to the Company proposals for insurance contracts, all at the Agent's expense, for which a commission is specified in Exhibit A;
   b. Bind and execute insurance contracts per Company guidelines;
   c. Exercise his/her authority personally or through authorized employees;
   d. Represent other companies; and
   e. Exercise exclusive and independent control of his/her time and the conduct of his/her agency.
2. The Agent is **not** authorized to:
   a. Waive or change any of the terms, rates or conditions of any Company policy or contract;
   b. Use anything other than the Company's regularly furnished advertising material without obtaining the written consent of the Company; or
   c. Admit liability or authorize repairs, unless otherwise authorized by the Company in writing.

### B. Responsibility of Agent

1. Collect and receipt for premiums and, as full compensation, to receive commission out of premiums so collected as specified. To refund return commissions on policy cancellations or reductions at the same rate at which they were originally retained.
2. Hold all premiums collected by the Agent in trust for the Company and set aside solely for the Company and not use those premiums in any way except for commissions due as provided for in this Agreement.
3. Pay the Company not later than 45 days from the end of the month in which the business was written the premium amount due on non-direct billed business. Differences of opinion over balances due shall not constitute a "failure to pay."
4. Forward to the Company copies of all binders, policies and endorsements issued by the Agency not later than five (5) business days following the inception date of coverage.
5. Provide the usual and customary services of an insurance agent to policyholders insured with the Company and promptly notify the Company of all claims or potential claims of which the Agent has knowledge.
6. Cooperate fully with the Company to facilitate investigation and adjustment of any claim when requested to do so.
7. Promptly notify the Company when the Agent receives notice of the commencement of any legal action against the Company; and, unless previously authorized by the Company, refrain from admitting or denying liability on the part of the Company in connection with any claim or loss.
8. Secure and maintain an errors and omissions professional liability policy with a reputable insurer carrying a liability limit of not less than $500,000 and furnish a copy of the declarations page of such policy to the Company upon request. Provide written notice to the Company of the cancellation, lapse or nonrenewal of its errors and omissions professional liability insurance and, in such event, agree to immediate termination of this agreement.
9. Comply with the applicable state privacy laws which are functionally regulating the minimum privacy standards set out in such laws, including the Gramm-Leach-Bliley Act, and any amendments and revisions thereto.
10. Keep books of account on records pertaining to Company business which shall be open for inspection by the Company upon reasonable notice.
11. Represent the Company by complying with all applicable laws and regulations, including legally required disclosure of compensation from the Company, and employing business practices which are of the highest ethical standards.

### C. Responsibility of Company

1. Provide the usual and customary services of an insurance company on behalf of its policyholders, agents and the general public.
2. Direct the investigation, settlement and defense of any claim or action.

### D. Billing and Collection of Premiums and Payment of Commissions

1. Commissions on premiums shall be the only compensation the Agent shall accept from any party for the placement of insurance with the Company and shall be paid to the Agent by the Company within 30 days after the end of the month in which such premiums are received and recorded by the Company. The Company may offset the commissions owed the Agent by return commissions owed by the Agent to the Company on unearned premium, on cancelled or nonrenewed policies, and on premiums due the Company that are either uncollectible or referred to a collection agency, whether or not such premiums are collected by the collection agency. The commissions to be paid are set forth in Exhibit A hereto which may be amended from time to time upon notice as set forth in sec. I.1 of General Provisions.
2. If any additional premiums developed by audit cannot be collected by the Agent, the Company shall undertake direct collection and the Agent shall not be responsible for such premium providing the Agent notifies the Company within 45 days of the Company's initial date of billing. No commission shall be paid to the Agent on such premiums collected by the Company.
3. At its election, the Company may assume responsibility for billing and collecting the initial premium when the existing business of the Agent is transferred to a direct-billed program. In that event, the Company shall be responsible for all other premium billing and collection directly related to the current policy term, unless otherwise mutually agreed by the parties.
4. At its election, the Company may apply undistributed commissions as an offset against any monies due the Company by the Agent.
5. If the Agent is in arrears on its monthly statement balance, the Company shall have the option to immediately convert any or all policies to direct bill.
6. The omission of any item(s) from a monthly statement shall not affect the reponsibility of either

party to account for and pay all amounts due the other, nor shall it prejudice the rights of either party to collect all such amounts from the other.

### E. Indemnification

1. The Company shall indemnify and hold the Agent harmless from all civil liability, including attorney fees and costs of investigation and defense, arising as a direct result of:
   a. A Company error, act or omission, except to the extent the Agent has caused such error, act or omission;
   b. Failure of an insured to receive notice of cancellation, nonrenewal or any other notice affecting coverage where such notices are sent directly to the insured by the Company; and
   c. Any action or inaction of the Agent based upon the Agent's use of forms supplied by the Company, or following instructions or procedures established by the Company, except to the extent the Agent has caused such failure. The Agent shall promptly notify the Company upon receiving notice of the commencement of any action related to such liabilities and the Company shall be entitled to participate in, or to assume the defense of, such action. If the Company assumes the defense, it shall not be liable to the Agent for any legal or other expense subsequently incurred by the Agent in connection with such action without the Company's approval.
2. The Agent shall indemnify and hold the Company harmless from all liability arising out of the Agent's error, act or omission except to the extent the Company has caused such error, act or omission.

### F. Termination

This Agreement may be terminated at any time upon the mutual agreement of the parties or as follows:

1. By the Company, immediately, if (i) the Agent's license to solicit insurance is suspended or revoked by any government authority having competent jurisdiction; (ii) the Agent fails to comply with the laws of any state in which the Agent is licensed to solicit insurance; (iii) the Agent becomes insolvent, is adjudged bankrupt, files or has filed against it any petition under any Federal bankruptcy law or state insolvency law, has a receiver appointed for its business or property, makes an assignment for the benefit of creditors, or fails to pay the Company promptly for any indebtedness due it, provided the Agent has been given written notice of such indebtedness.
2. By the Company, upon fifteen (15) days written notice to the Agent, if the Agent:
   a. Transfers or assigns this Agreement without the prior written consent of the Company; or
   b. Makes a change in the ownership, control or full-time active management of the Agent without the prior written consent of the Company.
3. By either party, for any reason, upon 90 days written notice or as otherwise required by applicable state law.

### G. Rights and Responsibilities Upon Notice of Termination

1. The Agent's authority to solicit, bind or execute contracts of insurance for any new business on behalf of the Company will cease on the date notice of termination of this Agreement is given.
2. The Company agrees to continue unexpired policies in force until expiration, subject to earlier termination in accordance with the Company's underwriting and other standards.
3. The Agent is authorized to service unexpired insurance policies and to bind policy endorsements granting additional coverage only if they meet with the Company's normal underwriting requirements, and also arrange for appropriate underwriting, claim, engineering, premium audit and other necessary Company services on such policies.
4. The Agent having promptly accounted for and paid over premiums for which it may be liable, the Agent's records, use and control of expirations shall remain the property of the Agent and be left in his/her undisputed possession; otherwise the amount of indebtedness shall constitute a lien against the value of the expirations. If in disposing of such records and expirations the Company does not realize sufficient money to discharge in full the Agent's indebtedness to the Company, the Agent shall remain liable for the balance of such indebtedness. Any amount realized in excess of indebtedness, less expense of disposing of such records and expirations, shall be returned to the Agent.
5. In any case where the Company, with permission of the Agent, renews a policy with the agent after termination of this agreement, the regular and usual commissions will be paid on this business except that no contingency commission will be applicable to the same.
6. The Agent shall promptly return any unused applications, Company supplies or other indicia of agency authority furnished by the Company to the Agent immediately upon termination.

### H. Changes in Ownership, Management or Control of Agent

1. This Agreement is entered into by the Company with the Agent because the person(s) identified as the owners, managers and those who have signed this Agreement are especially suited to carry out its terms and conditions. The Agent may not change the ownership, management or control of the Agent without the Company's express written consent thereto.
2. The Agent may not transfer or assign this Agreement without the Company's express written consent thereto.

### I. General Provisions

1. This Agreement may be revised by the Company after it gives the Agent at least 90 days notice setting forth the proposed revision and its effective date.
2. Whenever written notice is required by this Agreement, it shall be mailed in an envelope addressed to the Agent or the Company (as appropriate) and be separate and apart from any other unrelated notice or correspondence.
3. No failure to insist on strict compliance with any term of this Agreement shall constitute a waiver or relinquishment of the right to insist upon such compliance at any other time.
4. No waiver by either party of any breach by the other of the provisions of this Agreement shall be considered a waiver of any other or subsequent breach.
5. If a conflict exists as to which of two or more duly appointed agents are authorized to represent an existing or prospective policyholder, a written statement signed by the policyholder designating the agent may be relied upon by the Company to determine the servicing agent. The Company, at its sole discretion, shall determine which agent is entitled to receive commissions with respect to such conflict.
6. This Agreement replaces and supersedes all agency agreements, written or oral, which may have existed between the Agent and the Company and constitutes the full agreement between the parties.
7. This Agreement shall be interpreted and con-

strued under the laws of the State of Wisconsin.
8. Exclusive jurisdiction over any litigation arising out of any dispute under this Agreement or regarding the performance of this Agreement by either party shall be conferred upon the Circuit Court of Sheboygan County, Wisconsin.

This agreement shall be binding upon the heirs, executors, successors and assigns of the parties. In witness whereof, the parties have signed this agreement on the date set forth above.

WITNESSES:

_____
*(signature)*

WITNESSES:

_____
Tracy Nuthak

ACUITY, A MUTUAL INSURANCE COMPANY, the Company

By: _____
Authorized Representative

NUTHAK INSURANCE, LLC, the Agent

By: _____
Stephen C. Nuthak, President

TO BE EXECUTED IF AGENCY IS INCORPORATED

In consideration of the Company appointing Nuthak Insurance, LLC, as Agent, and as an inducement to it so to do, Stephen C. Nuthak jointly and severally guarantee the faithful performance of the obligations assumed by the above named Agent and agree jointly and severally to pay any sum to which said Agent may become liable to the Company by virtue of an agency created by this agreement.

In witness whereof the parties hereto have hereunto set their hands and seals this ____23rd____ day of ____August____, 20 _07_.

_____
Stephen C. Nuthak