UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| ACUITY, A MUTUAL INSURANCE COMPANY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| vs. | ) | 1:10-cv-00261-LJM-MJD |
| | ) | |
| NUTHAK INSURANCE, LLC; STEPHEN C. NUTHAK, | ) | |
| | ) | |
| Defendants. | ) | |

## ORDER

Pending before the Court are plaintiff's, Acuity, a Mutual Insurance Company ("Plaintiff"), Motion for Partial Summary Judgment [Dkt. No. 52] and defendants', Nuthak Insurance, LLC and Stephen C. Nuthak ("Mr. Nuthak") (collectively, "Defendants"), Motion for Summary Judgment [Dkt. No. 55].  The Court has considered the parties' arguments and rules as follows.[1]

## I.  BACKGROUND

Broadly speaking, this case is an agency dispute between an insurance company and Defendants, an independent insurance agent and his company.  In August 1988, Mr. Nuthak obtained his insurance license.  Dkt. No. 54-2 at 3.  From 1993 until April 1, 2007, Mr. Nuthak sold insurance as an employee of Federated Mutual Insurance ("Federated").  *Id.* at 4.  Mr. Nuthak received about five weeks of formal training with Federated.  *Id.*

---

[1]  Also pending is Plaintiff's Request for Oral Argument on Summary Judgment Motions [Dkt. No. 62].  As the Court has sufficient information to decide summary judgment without additional argument, Plaintiff's Request for Oral Argument is **DENIED**.

After leaving Federated, Mr. Nuthak decided to become an independent insurance agent.  *Id.* at 5.  He incorporated Nuthak Insurance, LLC to enter into agency contracts with various insurance companies, and those companies would compensate Defendants by commission.  *See, e.g.*, dkt. no. 54-1 at 2.  On August 23, 2007, Defendants entered into a contract ("Agency Contract") with Plaintiff.  *See generally id.*  The Agency Contract authorized Defendants to "[b]ind and execute insurance contracts per [Plaintiff's] Company guidelines."  *Id.* at 2.  Mr. Nuthak received approximately six hours of training from Plaintiff and began selling insurance for Plaintiff as an independent agent.  Dkt. No. 54-2 at 6.

In late 2007, Mr. Nuthak contacted Dennis Decker ("Mr. Decker") concerning insurance for a restaurant, the Dutch Meal Amish Style Buffet ("Restaurant"), and other buildings on the same property.  Dkt. No. 54-3 at 6.  Mr. Decker represented the insurance interests of Swiss Companies, Inc. and Toni Decker and John Schmidt d/b/a Swiss Partners (collectively, "Insureds"), which operated the Restaurant and owned the building where the Restaurant was located, respectively.  *Id.* at 4–6.  Mr. Nuthak obtained a commercial quote on Plaintiff's online system by answering a series of questions about the Insureds' business and facilities.  Dkt. No. 54-2 at 12.  On January 17, 2008, Mr. Decker gave Mr. Nuthak a Swiss Companies check that he understood to be a down payment on insurance policies from Plaintiff for both of the Insureds.   Dkt. No. 54-3 at 7, 10–11.  Mr. Decker believed that the Insureds would have insurance coverage from Plaintiff beginning February 1, 2008, the date the Insureds previous policies with State Farm expired.  *Id.* at 11.  Mr. Nuthak mailed the check and a copy of the commercial quote he had previously obtained on the online system to Plaintiff's underwriter, Matthew Draxler ("Mr. Draxler"), in Milwaukee, Wisconsin.  Dkt. No. 54-4 at 9; *see also* dkt. nos. 54-5, 54-6.

2

Because restaurants tend to have a higher risk of fire than other commercial properties, Plaintiff requires a Supplemental Application to be submitted with every insurance application for a restaurant. Dkt. No. 54-9 at 4. The Supplemental Application asks a number of questions about the property, including whether the building was originally built to be a restaurant, whether the facility has banquet facilities and live entertainment, and whether the business has been in operation for at least three years. *See* dkt. no. 54-7. Under Plaintiff's guidelines ("Guidelines"), Plaintiff will only approve policies for restaurants that are housed in buildings designed to be restaurants where the business has been in operation for at least three years and is without live entertainment or banquet facilities. *See* dkt. no. 54-11.

Upon receiving the materials from Mr. Nuthak, Mr. Draxler immediately became concerned as to whether the Restaurant was a type of property that met the Guidelines. Dkt. No. 54-4 at 10. The Supplemental Application for the Restaurant indicated that the Restaurant had been in business for three years or more, the building housing the Restaurant was originally constructed as a restaurant, and the Restaurant had no live entertainment or banquet facilities. Dkt. No. 54-7. Additionally, the Supplemental Application had the box labeled "Coverage Bound" checked. *Id.* Once the "Coverage Bound" box is checked on an application and a payment is received, Plaintiff treats that insurance as bound, regardless of whether an agent had authority to bind the insurance, and must cancel a given policy rather than refusing to issue the policy in the first place. Dkt. No. 54-9 at 6. With minimal internet research, Mr. Draxler concluded that at least some of the answers on the Supplemental Application were incorrect. Dkt. No. 54-4 at 12.

In late January 2008, Mr. Draxler and Mr. Nuthak discussed Mr. Draxler's concerns.

3

Mr. Nuthak informed Mr. Draxler that some items on the Supplemental Application were not accurate. Dkt. No. 56-1 at 13–16. Based on his discussions with Mr. Nuthak and research, Mr. Draxler wanted to "application reject" the coverage for the Insureds. Dkt. No. 54-4 at 11. In Plaintiff's working terminology, to "application reject" or "app reject" an insurance policy means to terminate a policy because the risk at issue does not meet one or more of the Guidelines. *Id.* at 7. However, Mr. Draxler was overruled by someone higher up in Plaintiff's organization, and the decision was made to maintain the Insureds' policies pending a loss control inspection of the Restaurant. *Id.* at 8.

Plaintiff concluded that unless the Restaurant was a "superior risk," Plaintiff would cancel the Insureds' coverage. *Id.* at 13. On February 19, 2008, Plaintiff's employee, Jeff Smith ("Mr. Smith"), conduced a loss control inspection of the Restaurant. Dkt. No. 56-4 at 2. Through the inspection, Mr. Smith became aware that the business had not been in operation for three years, its building had not originally served as a restaurant, and the business had live music and a banquet facility. *Id.* Additionally, Toni Decker, one of the Restaurant's owners, stated that "she would not have gotten into the restaurant business if she knew what she knows now." Dkt. No. 56-3 at 25. Mr. Smith gave an oral report to Mr. Draxler on the same date as the inspection. *Id.* at 24. The following day, Mr. Smith submitted a written report on the loss control inspection grading the Restaurant as 4/10, a below average risk. *Id.*

On February 27, 2008, Mr. Draxler began the process for cancelling the Insureds' policies under the thirty day cancellation provision of Indiana Code Section 27-1-31-2.5(3). Dkt. No. 54-4 at 16  On March 6, 2008, cancellation letters were sent to the Insureds, informing them that their policies would terminate on April 6, 2008. Dkt. No. 54-12.

4

However, on March 5, 2008, the Restaurant burned down and all of its contents were destroyed. Dkt. No. 56-10 at 3. Plaintiff paid the Insureds $361,730.99 under the business policy for the restaurant operations and $397,874.00 under coverage for the physical building. Dkt. No. 56-5 at 2–3.

On March 4, 2010, Plaintiff filed its complaint against Defendants, alleging negligence and breach of contract and requesting indemnification. Dkt. No. 1. On September 24, 2010, Plaintiff filed an amended complaint adding a fraud allegation. Dkt. No. 32. Both parties file for summary judgment. Plaintiff seeks summary judgment on all elements of its claims with the exception of damages. *See generally* dkt. nos. 52–53. Defendants seek summary judgment in their favor, arguing, in addition to lack of evidence, that Plaintiff's claims are barred by applicable statutes of limitations. *See generally* dkt. nos. 55–56.

The Court includes additional facts below as necessary.


## II.  STANDARD

As stated by the Supreme Court, summary judgment is not a disfavored procedural shortcut, but rather is an integral part of the federal rules as a whole, which are designed to secure the just, speedy, and inexpensive determination of every action. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986); *see also United Ass'n of Black Landscapers v. City of Milwaukee*, 916 F.2d 1261, 1267–68 (7th Cir. 1990). Motions for summary judgment are governed by Federal Rule of Civil Procedure 56(a), which provides in relevant part:

The court shall grant summary judgment if the movant shows that there is no

5

> genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.

Once a party has made a properly-supported motion for summary judgment, the opposing party may not simply rest upon the pleadings but must instead submit evidentiary materials showing that a material fact is genuinely disputed. FED. R. CIV. P. 56(c)(1). A genuine dispute of material fact exists whenever "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). The nonmoving party bears the burden of demonstrating that such a genuine dispute of material fact exists. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986); *Oliver v. Oshkosh Truck Corp.*, 96 F.3d 992, 997 (7th Cir. 1996). It is not the duty of the Court to scour the record in search of evidence to defeat a motion for summary judgment; rather, the nonmoving party bears the responsibility of identifying applicable evidence. *See Bombard v. Ft. Wayne Newspapers, Inc.*, 92 F.3d 560, 562 (7th Cir. 1996).

In evaluating a motion for summary judgment, the Court should draw all reasonable inferences from undisputed facts in favor of the nonmoving party and should view the disputed evidence in the light most favorable to the nonmoving party. *See Estate of Cole v. Fromm*, 94 F.3d 254, 257 (7th Cir. 1996). The mere existence of a factual dispute, by itself, is not sufficient to bar summary judgment. Only factual disputes that might affect the outcome of the suit in light of the substantive law will preclude summary judgment. *See Anderson*, 477 U.S. at 248; *JPM Inc. v. John Deere Indus. Equip. Co.*, 94 F.3d 270, 273 (7th Cir. 1996). Irrelevant or unnecessary facts do not deter summary judgment, even when in dispute. *See Clifton v. Schafer*, 969 F.2d 278, 281 (7th Cir. 1992). If the moving

party does not have the ultimate burden of proof on a claim, it is sufficient for the moving party to direct the court to the lack of evidence as to an element of that claim. *See Green v. Whiteco Indus., Inc.*, 17 F.3d 199, 201 & n.3 (7th Cir. 1994). "If the nonmoving party fails to establish the existence of an element essential to [her] case, one on which [she] would bear the burden of proof at trial, summary judgment must be granted to the moving party." *Ortiz v. John O. Butler Co.*, 94 F.3d 1121, 1124 (7th Cir. 1996).

### III. DISCUSSION

### A. STATUTE OF LIMITATIONS

Defendants contend that they are entitled to summary judgment because Plaintiff's claims are barred by applicable statutes of limitations. Defendants contend that a two-year statute of limitations should apply to all of Plaintiff's claims, and that statute of limitations should begin running no later than January 29, 2008, the date Defendants submitted the paperwork to Plaintiff. In contrast, Plaintiff contends that their breach of contract and fraud claims are subject to ten- and six-year statutes of limitations, respectively, and the statute of limitations on their negligence claim begins to run on March 5, 2008, the date of the fire.

Indiana law follows the discovery rule for statutes of limitations in tort and contract cases, and the "cause of action accrues, and the statute of limitations begins to run, when the plaintiff knew or, in the exercise of ordinary diligence, could have discovered that an injury had been sustained as a result of the tortious act of another." *Wehling v. Citizens Nat'l Bank*, 586 N.E.2d 840, 842 (Ind. 1992). When an employee is acting in an employer's interest, the employee's knowledge is imputed to the employer. *See Williams Elecs.*

7

*Games, Inc. v. Garrity*, 366 F.3d 569, 575 (7th Cir. 2004); *see also Southport Little League v. Vaughan*, 734 N.E.2d 261, 274 (Ind. Ct. App. 2000). When determining the cause of action for statute of limitations purposes, the substance of the cause of action controls over the form of the action. *Whitehouse v. Quinn*, 477 N.E.2d 270, 273–74 (Ind. 1985).

The Court concludes that Plaintiff's negligence claim is time barred. As stated previously, the statute of limitations begins to run when a party knew or could have known through reasonable diligence that he or she had been injured by another's conduct. *Wehling*, 586 N.E.2d at 842. In this case, Plaintiff's alleged injury was being forced into responsibilities for insurance policies through its agents' improper conduct. Key to this injury is when Plaintiff—through any of its employees—knew or should have known that the Restaurant did not meet the Guidelines. This could have been as early as January of 2008, when Mr. Nuthak communicated to Mr. Draxler that some of the material in the Supplemental Application was incorrect. *See* dkt. no. 56-1 at 13–16. In any event, the loss control inspection on February 19, 2008, undoubtedly provided Plaintiff knowledge that Defendants potentially engaged in tortious conduct and injured Plaintiff. *See* dkt. no. 56-4 at 2. Therefore, the Court concludes that the latest possible date that the statute of limitations could have started to run was February 19, 2008. Under Indiana law, negligence claims have a two year statute of limitations. IND. CODE § 34-11-2-4 (2011). Because Plaintiff filed its complaint on March 4, 2010, more than two years after the statute of limitations began to run, the Court concludes that Plaintiff's negligence claim is barred by the statute of limitations.

Defendants contend that Plaintiff's remaining claims are effectively versions of

malpractice[2] claims and, therefore, substantively tort claims.  However, the cases cited by Defendants in support of this argument involve suits by customers against insurance agents for failure to obtain adequate or agreed-upon coverage.  *See Page v. Hines*, 594 N.E.2d 485 (Ind. Ct. App. 1992); *Butler v. Williams*, 527 N.E.2d 231 (Ind. Ct. App. 1988).  Without written contracts, those courts concluded that the malpractice action was effectively an action for negligence causing loss of personal property and, therefore, fell under the two year statute of limitations for general negligence claims.  *See also Shideler v. Dwyer*, 417 N.E.2d 281, 288–89 (Ind. 1981) (legal malpractice as negligence action).  The Court has found no cases in which a principal has sued an agent[3] under a malpractice theory and is not persuaded that this is a malpractice case.  *Cf. Filip v. Block*, 879 N.E.2d 1076, 1083 (Ind. 2008) (insurance agent and company); *Shideler*, 417 N.E.2d at 288 (legal malpractice).  Additionally, none of the cases cited by Defendants involve written contracts, as is the case here.  Therefore, the two year statute of limitations applicable to insurance agent malpractice claims does not apply to Plaintiff's breach of contract, indemnity, or fraud claims.

Plaintiff's breach of contract and indemnity claims are both variations of contract claims.  When the source of the duty allegedly breached is a written contract, the claim is

---

[2] Defendants imply that Indiana Code Section 34-11-2-3, "Professional services related actions," might apply to this case.  However, the Indiana Supreme Court has made it clear that this provision only applies in suits against medical professionals, not other professionals such as attorneys, real estate agents, or insurance agents.  *See Shideler v. Dwyer*, 417 N.E.2d 281, 283 (Ind. 1981) (interpreting precursor statute).  As Defendants are not medical professionals, Section 34-11-2-3 has no applicability to this case.

[3] Defendants do cite one Illinois case with a similar fact pattern, but the result in that case is based on a specific Illinois statute dealing with suits against insurance agents.  *See Ind. Ins. Co. v. Machon & Machon Inc.*, 753 N.E.2d 442 (Ill. App. Ct. 2001) (interpreting 735 Ill. Comp. Stat. 5/13-214.4 (1996), which provide statute of limitations for all claims against insurance agents).  Indiana has no such statute, and no Indiana case law applies a similar rule.

9

a breach of contract claim.  *See Lilly Indus., Inc. v. Health-Chem Corp.*, 974 F. Supp. 702, 710 (S.D. Ind. 1997).  In its breach of contract claim, Plaintiff points to the provision of the Agency Contract stating, "The Agent is an independent contractor . . . authorized to . . . bind and execute insurance contracts per Company guidelines," and "is not authorized to . . . waive or change any of the terms, rates or conditions of any Company policy or contract[.]"  Dkt. No. 54-1 at 2.  Although actions outside of an agent's authority also might form the basis for tort liability, in this case, the agent's duties are specifically set forth in the Agency Contract.  Therefore, Plaintiff's breach of contract claim is subject to the statute of limitations applicable to all written contract claims—ten years.  IND. CODE § 34-11-2-11 (2011).  There is no question that Plaintiff filed its claim for breach of contract well within the ten year statute of limitations.

Similar reasoning applies for Plaintiff's indemnity claim.  *See Health-Chem Corp.*, 974 F. Supp at 710 (applying same rule for contractual indemnity provisions as other contract provisions).  The Agency Contract provides that "[t]he Agent shall indemnify and hold the Company harmless from all liability arising out of the Agent's error, act or omission except to the extent the Company has caused such error, act or omission."  Dkt. No. 54-1 at 3.  Because any duty to indemnify is provided for by the Agency Contract, a ten year statute of limitations applies.  *Health-Chem Corp.*, 974 F. Supp. at 710.  Plaintiff's unquestionably have brought their action within the allowable ten years.

Turning to Plaintiff's fraud claim, the Court concludes that it is not barred by the applicable statute of limitations.  In this case, it is clear that Section VIII of Plaintiff's Amended Complaint is an action for fraud, both in substance and in form.  *See* dkt. no. 32 ¶¶ 33–38.  By Indiana statute, "[a]ctions for relief against frauds" are subject to a six-year

statute of limitations.  IND. CODE § 34-11-2-7(4) (2011).  Therefore, at least as Plaintiff's

fraud claim is concerned, any potential fraud occurring within the six years prior to

September 27, 2010 is within the statute of limitations.  Defendants and Plaintiff entered

into the Agency Contract on August 27, 2007, and there is no suggestion that any

potentially fraudulent conduct occurred prior to that date.  Therefore, Plaintiff's fraud claim

is brought within the applicable statute of limitations and not time barred.


## B.  PLAINTIFF'S SUBSTANTIVE CLAIMS

### 1.  NEGLIGENCE

Plaintiff contends that Defendants were negligent in binding Plaintiff to insurance

policies in violation of the Guidelines.  Dkt. No. 32 ¶¶ 16–25.  As discussed above,

Plaintiff's negligence claim is time barred.  Therefore, the Court need not consider the

merits of Plaintiff's claim, and Defendants' Motion for Summary Judgment is **GRANTED**

as to Plaintiff's negligence claim.  Plaintiff's Motion for Partial Summary Judgment is

**DENIED** as to the negligence claim.


### 2.  BREACH OF CONTRACT

To maintain an action for breach of contract, a plaintiff must show (1) the existence

of a valid contract creating obligations between the parties; (2) a material breach of the

contract by the defendant; and (3) damages to the plaintiff flowing naturally and probably

from the breach.  *Matthews v. Wis. Energy Corp., Inc.*, 642 F.3d 565, 570–71 (7th Cir.

2011).  In this case, Plaintiff requests summary judgment only on the first two

elements—existence of a contract and breach—and not the damages element.  Dkt. No.

11

52 ¶¶ 3–4.  Plaintiff contends that Defendants breached the Agency Contract by failing to follow the Guidelines and binding the Insureds' policies for the Restaurant.  *Id.* ¶¶ 26–28.  In particular, Plaintiff points to Sections A.1.b and A.2.a of the Agency Contract, which give Defendants the agency authority to "[b]ind and execute insurance contracts per Company guidelines" and disallow Defendants the authority "to [w]aive or change any of the terms, rates or conditions or any Company policy or contract[.]" Dkt. No. 54-1 at 2.  Defendants contend that Plaintiff waived the Guidelines, destroying any contractual duty based upon them and entitling Defendants to summary judgment on Plaintiff's breach of contract in its entirety.

The Agency Contract states that Wisconsin law shall apply to its interpretation and construction.  Dkt. No. 54-1 at 3–4.  The goal of contract interpretation is to give effect to the intent of the parties at the time the contract was made as expressed in the language of the contract.  *Folkman v. Quamme*, 665 N.W.2d 857, 864 (Wis. 2003).  When the contractual language is unambiguous, courts apply the literal meaning of that language.  *Farm Credit Servs. of N. Cent. Wis. v. Wysocki*, 627 N.W.2d 444, 448 (Wis. 2001).  If the language is ambiguous, courts may look to extrinsic evidence to discern the language's meaning.  *Id.*

To find a contractual duty, the Court must find that a contract exists and define its terms.  In this case, the existence of a contract is clear—all parties agree that the Agency Contract is valid and governs the terms of the agency relationship between Plaintiff and Defendants.  *See* dkt. no. 53 at 3; dkt. no. 56 at 1.  Turning to the language of the Agency Contract, it states that the agent "is authorized to . . . bind and execute insurance contracts per Company guidelines[.]" and "is **not** authorized to [w]aive or change any of the terms,

rates or conditions of any Company policy or contract[.]" Dkt. No. 54-1 at 2 (emphasis in original). The Court concludes that this language unambiguously requires Defendants, as the insurance agent, to follow the Guidelines in negotiating and binding insurance policies. The Guidelines are Plaintiff's company policy and include specific language regarding the characteristics for restaurants to obtain insurance coverage from Plaintiff. *See* dkt. no. 54-7; *see also* dkt. no. 54-4 at 5, 16 (discussing how strictly the Guidelines were upheld). Under the Agency Contract, Defendants had no authority to change any of the Guidelines or commit Plaintiff to insurance policies failing to meet the Guidelines. *See* dkt. no. 54-1 at 2. In short, the unambiguous language of the Agency Contract requires Defendants to comply with the Guidelines.

The undisputed material facts lead the Court to conclude that Defendants breached their contractual duty to comply with the Guidelines. The Guidelines prohibit insurance agents from binding any restaurant insurance policies on their own, regardless of whether the restaurant at issue meets the underwriting requirements of the Guidelines. *See* dkt. no. 54-4 at 8–9; dkt. no. 54-9 at 4. In his deposition testimony, Mr. Nuthak stated that he did not bind policies at all, and by checking the "Coverage Bound" box on the Supplemental Application in this case, he was expressing his opinion that the Restaurant "was likely to be a profitable risk for Acuity and . . . worthy of sending on to the underwriter for evaluation." Dkt. No. 54-2 at 6, 14. However, because binding an insurance policy creates a contract between the insurance company and the customer, not between the insurance company and the insurance agent, Mr. Nuthak's perception as to whether a policy is bound is irrelevant. Both Plaintiff and the Insureds believed they had a binding contract between them. Dkt. No. 54-3 at 11; dkt. no. 54-9 at 6. Indeed, the contract between Plaintiff and

13

the Insureds was completed when Plaintiff compensated the Insureds for the Restaurant after the fire.   *See* dkt. no. 56-5 at 2–3.  The Court concludes that by checking the "Coverage Bound" box on the Supplemental Application and submitting the check, Defendants bound Plaintiff to cover the Restaurant in violation of the Guidelines and in breach of the Agency Contract.

Defendants contend that Plaintiff waived compliance with the Guidelines in this case, and therefore, they are entitled to summary judgment.   Waiver is the intentional relinquishment of a known right.  *Hanz Trucking, Inc. v. Harris Bros. Co.*, 138 N.W.2d 238, 244 (Wis. 1965).  To show that a waiver was "intentional" requires proof that the waiving party acted intentionally and with actual or constructive knowledge of material facts, but proof of the waiving party's actual intent is not required.  *Nugent v. Slaght*, 638 N.W.2d 594, 597 (Wis. Ct. App. 2001).   Although there is an issue of fact as to whether Plaintiff's conduct waived the underwriting portions of the Guidelines, this issue is immaterial. Defendants have presented no evidence indicating that Plaintiff waived its Guideline disallowing agents from binding insurance policies for restaurants.  There is no evidence presented that Plaintiff had knowledge of the material facts when the Restaurant's policies were bound, as none of Plaintiff's employees knew about the transaction until the Supplemental Application arrived with the "Coverage Bound" box already checked and payment submitted.  *See Bennecke v. Conn. Mut. Life Ins. Co.*, 105 U.S. 355, 360 (1881) (no waiver when principal had no knowledge of unauthorized act of agent when alleged waiver occurred).  As soon as Plaintiff realized Defendants' actions, Plaintiff admonished Defendants that they had no authority to bind insurance policies for restaurants.  *See* dkt. no. 54-8 at 2–3.  The Court concludes that Plaintiff did not waive its Guideline prohibiting

14

agents from binding restaurant risks.   Therefore, Defendants' Motion for Summary Judgment as to the breach of contract claim is **DENIED** and Plaintiff's Motion for Partial Summary Judgment is **GRANTED** as to the same.

### 3.  INDEMNIFICATION

Plaintiff requests a summary judgment finding that Defendants are obligated to indemnify Plaintiff for liability arising out of Defendants' actions or omissions.  Dkt. No. 52 ¶ 5.   Contracts for indemnification are valid and interpreted as any other contract. *Herchelroth v. Mahar*, 153 N.W.2d 6, 8–9 (Wis. 1967).  In this case, the Agency Contract provides that "[t]he Agent shall indemnify and hold the Company harmless from all liability arising out of the Agent's error, act or omission except to the extent the Company has caused such error, act or omission."  Dkt. No. 54-1 at 3.  Defendants have presented no arguments or evidence to suggest that the indemnification clause is invalid or unenforceable, and the Court concludes that the indemnification clause is valid and enforceable.  Plaintiff's Motion for Partial Summary Judgment is **GRANTED** as to the indemnification clause, and Defendants' Motion for Summary Judgment is **DENIED** as to the same.

4. FRAUD

To maintain an action for fraud, Plaintiff must prove (1) a material representation of past or exists facts which (2) was false, (3) was made with knowledge or reckless ignorance of its falsity, (4) was made with intent to deceive, (5) was rightfully relied upon by Plaintiff, and (6) proximately caused injury to Plaintiff. *Lawyers Title Ins. Corp. v. Pokraka*, 595 N.E.2d 244, 249 (Ind. 1992). Plaintiff seeks summary judgment on elements one, two, three, and five. Dkt. No. 52 ¶¶ 6–8.

Examining element one, the parties largely agree that representations made on the Supplemental Application are material to Plaintiff's decision whether to provide insurance coverage for a given restaurant. Because of the risks of property damage inherent in restaurant operations, the Supplemental Application asked a number of questions relevant to those risks. Dkt. No. 54-9 at 4. If the answers on the Supplemental Application indicate a restaurant that does not meet the underwriting Guidelines, Plaintiff will not issue a policy. Dkt. No. 54-4 at 8. Because the answers given on the Supplemental Application determine whether or not Plaintiff will insure a restaurant, the representations made on the Supplemental Application are material.

Turning to element two, the evidence leads the Court to conclude that at least some of the material representations Defendants made on the Supplemental Application were false. Defendants stated that the Restaurant had been in existence for three-and-a-half years, that the Insureds had owned and operated the Restaurant at its current location for three-and-a-half years, that the building was originally built as a restaurant, and that the Restaurant had no banquet facilities or live entertainment. Dkt. No. 54-7. Defendants admit that these representations were false. *See* dkt. no. 56-10 ¶¶ 19–22.

16

The Court further concludes that Defendants made the misrepresentations in question with knowledge, or at least reckless ignorance, of their falsity.  Plaintiff has introduced evidence that Mr. Nuthak was aware that the Restaurant had previously been a furniture store and that he had purchased items there.  Dkt. No. 54-2 at 8, 10–11. Additionally, Mr. Nuthak never asked Mr. Decker any of the relevant questions about the Restaurant to determine whether the answers Defendants provided to Plaintiff were accurate.  Dkt. No. 54-3 at 8–9; *see also* dkt. no. 54-2 at 14–15 (stating that Mr. Nuthak does not remember where he got the information for the Supplemental Application).  There is no evidence suggesting that Mr. Nuthak was relying on the Insureds for the information on the Supplemental Application, and his knowledge that the Restaurant was previously a furniture store was sufficient to require more investigation on Defendants' part before falsely answering questions on the Supplemental Application.  *See, e.g.*, *Dawson v. Hunter*, 649 N.E.2d 653, 662 (Ind. Ct. App. 1994) (knowledge of one broken wall enough to show reckless ignorance of problems in remaining walls).  At the very least, Defendants were recklessly ignorant as to the falsity of their representations.

While Plaintiff has successfully proven elements one, two, and three of the fraud inquiry, the Court agrees with Defendants that Plaintiff's cannot show element five—rightful reliance—as a matter of law.  Indiana subscribes to the imputed knowledge doctrine, under which an agent's knowledge gained within the scope of his agency is imputed to the principal, even if the principal does not actually know what the agent knows. *AutoXchange.com, Inc. v. Dreyer & Reinbold, Inc.*, 816 N.E.2d 40, 51 (Ind. Ct. App. 2004); *see also Field v. Campbell*, 72 N.E. 260, 263 (Ind. 1904).  As Mr. Draxler was Plaintiff's agent by virtue of his employment relationship, his knowledge is imputed to Plaintiff even

17

if Plaintiff's higher management did not have the same knowledge.  Mr. Draxler knew that the representations on the Supplemental Application were false because Mr. Nuthak admitted their falsity to him.  Dkt. No. 56-1 at 13–16.  Although the evidence suggests that Mr. Draxler's supervisor, Erik Haglund, relied on the representations made in the Supplemental Application in deciding not to "app reject" the Restaurant's policies immediately, *see* dkt. no. 54-9 at 7, under the imputed knowledge doctrine, Plaintiff cannot rely on those representations because Plaintiff's agent, Mr. Draxler, knew them to be false.  In fraud cases, plaintiffs may not rightfully rely on representations they know to be false.  *See Frenzel v. Miller*, 37 Ind. 1, 10 (1871); *see also Plumley v. Stanelle*, 311 N.E.2d 626, 630–31 (Ind. Ct. App. 1974).  Because Plaintiff had knowledge that the representations on the Supplemental Application were false through Mr. Draxler, Plaintiff could not rightfully rely on those misrepresentations, and Planitiff cannot establish element five of its fraud claim.  Therefore, Defendants' Motion for Summary Judgment as to the fraud claim is **GRANTED**, and Plaintiff's Motion for Partial Summary Judgment as to the same is **DENIED**.

## IV.  CONCLUSION

For the reasons discussed herein, Plaintiff's Motion for Partial Summary Judgment [Dkt. No. 52] is **GRANTED in part** and **DENIED in part**.  Defendants' Motion for Summary Judgment [Dkt. No. 55] is **GRANTED in part** and **DENIED in part**.  Plaintiff's Request for Oral Argument on Summary Judgment Motions [Dkt. No. 62] is **DENIED**.

Judgment is **GRANTED** to Defendants as to Plaintiff's negligence and fraud claims in their entirety.  Plaintiff's claims for breach of contract and indemnification remain active.

IT IS SO ORDERED this 31st day of October, 2011.


LARRY J. McKINNEY, JUDGE
United States District Court
Southern District of Indiana


Distribution to:

Angela Sallee Field
NORRIS CHOPLIN & SCHROEDER LLP
afield@ncs-law.com

Jessica L. Greyerbiehl
HUNT SUEDHOFF KALAMAROS LLP
jgreyerbiehl@hsk-law.com

Philip Edward Kalamaros
HUNT SUEDHOFF KALAMAROS
pkalamaros@hsk-law.com

Peter A. Schroeder
NORRIS CHOPLIN & SCHROEDER LLP
pschroeder@ncs-law.com