UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| ACUITY, A MUTUAL INSURANCE COMPANY ) ) ) | |
| Plaintiff, ) | |
| vs. ) | 1:10-cv-00261-LJM-MJD |
| ) | |
| NUTHAK INSURANCE, LLC, ) STEPHEN C. NUTHAK, ) ) | |
| Defendants. ) | |

**ORDER ON PLAINTIFF'S SUPPLEMENTAL MOTION FOR SUMMARY JUDGMENT**

Pending before the Court is Plaintiff's, Acuity, A Mutual Insurance Company ("Plaintiff"), Supplemental Motion for Summary Judgment [Dkt. No. 88]. The Court has reviewed the parties' submissions and **GRANTS** Plaintiff's Motion [Dkt. No. 88].

**I.  BACKGROUND**

Defendants Stephen C. Nuthak and Nuthak Insurance, LLC (collectively, "Defendants") are an independent insurance agent and his associated company. On August 23, 2007, Defendants entered into a contract ("Agency Contract") with Plaintiff. *See generally* dkt. no. 54-1. The Agency Contract authorized Defendants to "[b]ind and execute insurance contracts per [Plaintiff's] Company guidelines." *Id.* at 2.

In late 2007, Mr. Nuthak contacted Dennis Decker ("Mr. Decker") concerning insurance for a restaurant, the Dutch Meal Amish Style Buffet ("Restaurant"), and other buildings on the same property. Dkt. No. 54-3 at 6. Mr. Decker represented the insurance interests of Swiss Companies, Inc. and Toni Decker and John Schmidt d/b/a Swiss

Partners (collectively, "Insureds"), which operated the Restaurant and owned the building where the Restaurant was located, respectively. *Id.* at 4–6. Mr. Nuthak obtained a commercial quote on Plaintiff's online system by answering a series of questions about the Insureds' business and facilities. Dkt. No. 54-2 at 12. On January 17, 2008, Mr. Decker gave Mr. Nuthak a Swiss Companies check that he understood to be a down payment on insurance policies from Plaintiff for both of the Insureds. Dkt. No. 54-3 at 7, 10–11. Mr. Nuthak mailed the check and a copy of the commercial quote he had previously obtained on the online system to Plaintiff's underwriter, Matthew Draxler ("Mr. Draxler"), in Milwaukee, Wisconsin. Dkt. No. 54-4 at 9; *see also* dkt. nos. 54-5, 54-6.

Because restaurants tend to have a higher risk of fire than other commercial properties, Plaintiff requires a Supplemental Application to be submitted with every insurance application for a restaurant. Dkt. No. 54-9 at 4. The Supplemental Application asks a number of questions about the property, including whether the building was originally built to be a restaurant, whether the facility has banquet facilities and live entertainment, and whether the business has been in operation for at least three years. *See* dkt. no. 54-7. Under Plaintiff's guidelines ("Guidelines"), Plaintiff will only approve policies for restaurants that are housed in buildings designed to be restaurants where the business has been in operation for at least three years and is without live entertainment or banquet facilities. *See* dkt. no. 54-11.

Upon receiving the materials from Mr. Nuthak, Mr. Draxler immediately became concerned as to whether the Restaurant was a type of property that met the Guidelines. Dkt. No. 54-4 at 10. The Supplemental Application for the Restaurant indicated that the Restaurant had been in business for three years or more, the building housing the

Restaurant was originally constructed as a restaurant, and the Restaurant had no live entertainment or banquet facilities. Dkt. No. 54-7. Additionally, the Supplemental Application had the box labeled "Coverage Bound" checked. *Id.* Once the "Coverage Bound" box is checked on an application and a payment is received, Plaintiff treats that insurance as bound, regardless of whether an agent had authority to bind the insurance, and must cancel a given policy rather than refusing to issue the policy in the first place. Dkt. No. 54-9 at 6. With minimal internet research, Mr. Draxler concluded that at least some of the answers on the Supplemental Application were incorrect. Dkt. No. 54-4 at 12.

In late January 2008, Mr. Draxler and Mr. Nuthak discussed Mr. Draxler's concerns. Mr. Nuthak informed Mr. Draxler that some items on the Supplemental Application were not accurate. Dkt. No. 56-1 at 13–16. Based on his discussions with Mr. Nuthak and research, Mr. Draxler wanted to "application reject" the coverage for the Insureds. Dkt. No. 54-4 at 11. In Plaintiff's working terminology, to "application reject" or "app reject" an insurance policy means to terminate a policy because the risk at issue does not meet one or more of the Guidelines. *Id.* at 7. However, Mr. Draxler was overruled by someone higher up in Plaintiff's organization, and the decision was made to maintain the Insureds' policies pending a loss control inspection of the Restaurant. *Id.* at 8.

Plaintiff concluded that unless the Restaurant was a "superior risk," Plaintiff would cancel the Insureds' coverage. *Id.* at 13. On February 19, 2008, Plaintiff's employee, Jeff Smith ("Mr. Smith"), conduced a loss control inspection of the Restaurant. Dkt. No. 56-4 at 2. Through the inspection, Mr. Smith became aware that the business had not been in operation for three years, its building had not originally served as a restaurant, and the business had live music and a banquet facility. *Id.* Mr. Smith gave an oral report to Mr.

Draxler on the same date as the inspection. Dkt. No. 56-3 at 24. The following day, Mr. Smith submitted a written report on the loss control inspection grading the Restaurant as 4/10, a below average risk. *Id.*

On February 27, 2008, Mr. Draxler began the process for cancelling the Insureds' policies under the thirty day cancellation provision of Indiana Code Section 27-1-31-2.5(3). Dkt. No. 54-4 at 16  On March 6, 2008, cancellation letters were sent to the Insureds, informing them that their policies would terminate on April 6, 2008. Dkt. No. 54-12. However, on March 5, 2008, the Restaurant burned down and all of its contents were destroyed. Dkt. No. 56-10 at 3. Plaintiff paid the Insureds $361,730.99 under the business policy for the restaurant operations and $397,874.00 under coverage for the physical building. Dkt. No. 56-5 at 2–3.

On March 4, 2010, Plaintiff sued Defendants for negligence, breach of contract, indemnification, and fraud. Dkt. No. 1. On August 6, 20120, Defendants filed a counterclaim seeking indemnification in their favor. Dkt. No. 26.

On October 31, 2011, following briefing from the parties, this Court issued an Order on the parties' motions for summary judgment ("Liability Order"). *See generally* dkt. no. 73. In the Liability Order, the Court granted judgment in Defendants' favor on Plaintiff's claims for negligence and fraud, concluding that the negligence claim was brought outside the applicable limitations period and there was no evidence of rightful reliance underlying the fraud claim. *Id.* at 11, 17–18. However, the Court granted judgment in Plaintiff's favor on aspects of Plaintiff's breach of contract and indemnity claims. *Id.* at 11–15. The Court concluded that the Agency Contract was validly entered, and Defendants breached the Agency Contract by binding coverage for the Restaurant in violation of the Guidelines. *Id.*

4

at 12–15. The Court further concluded that the indemnification clause of the Agency Contract is valid and enforceable. *Id.* at 15.

Following the Liability Order, the parties stipulated that Plaintiff's claimed damages amount to $759,604.99 and that Plaintiff is entitled to recover prejudgment interest at a rate of four percent from the date of the last payment made by Plaintiff to the Insureds, which was September 18, 2008. Dkt. No. 82.

The Court includes additional facts below as necessary.

## II.  LEGAL STANDARD

As stated by the Supreme Court, summary judgment is not a disfavored procedural shortcut, but rather is an integral part of the federal rules as a whole, which are designed to secure the just, speedy, and inexpensive determination of every action. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986); *see also United Ass'n of Black Landscapers v. City of Milwaukee*, 916 F.2d 1261, 1267–68 (7th Cir. 1990). Motions for summary judgment are governed by Federal Rule of Civil Procedure 56(a), which provides in relevant part:

> The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.

Once a party has made a properly-supported motion for summary judgment, the opposing party may not simply rest upon the pleadings but must instead submit evidentiary materials showing that a material fact is genuinely disputed. FED. R. CIV. P. 56(c)(1). A genuine dispute of material fact exists whenever "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Anderson v. Liberty Lobby,*

*Inc.*, 477 U.S. 242, 249 (1986).  The nonmoving party bears the burden of demonstrating that such a genuine dispute of material fact exists.  *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986); *Oliver v. Oshkosh Truck Corp.*, 96 F.3d 992, 997 (7th Cir. 1996).  It is not the duty of the Court to scour the record in search of evidence to defeat a motion for summary judgment; rather, the nonmoving party bears the responsibility of identifying applicable evidence.  *See Bombard v. Ft. Wayne Newspapers, Inc.*, 92 F.3d 560, 562 (7th Cir. 1996).

In evaluating a motion for summary judgment, the Court should draw all reasonable inferences from undisputed facts in favor of the nonmoving party and should view the disputed evidence in the light most favorable to the nonmoving party.  *See Estate of Cole v. Fromm*, 94 F.3d 254, 257 (7th Cir. 1996).  The mere existence of a factual dispute, by itself, is not sufficient to bar summary judgment.  Only factual disputes that might affect the outcome of the suit in light of the substantive law will preclude summary judgment.  *See Anderson*, 477 U.S. at 248; *JPM Inc. v. John Deere Indus. Equip. Co.*, 94 F.3d 270, 273 (7th Cir. 1996).  Irrelevant or unnecessary facts do not deter summary judgment, even when in dispute.  *See Clifton v. Schafer*, 969 F.2d 278, 281 (7th Cir. 1992).  If the moving party does not have the ultimate burden of proof on a claim, it is sufficient for the moving party to direct the court to the lack of evidence as to an element of that claim.  *See Green v. Whiteco Indus., Inc.*, 17 F.3d 199, 201 & n.3 (7th Cir. 1994).  "If the nonmoving party fails to establish the existence of an element essential to [her] case, one on which [she] would bear the burden of proof at trial, summary judgment must be granted to the moving party."  *Ortiz v. John O. Butler Co.*, 94 F.3d 1121, 1124 (7th Cir. 1996).

### III. DISCUSSION

### A. BREACH OF CONTRACT

In the Liability Order, the Court concluded that the Agency Contract—a valid contract—existed between Plaintiff and Defendants and Defendants breached the Agency Contract. *See generally* dkt. no. 73 at 11–14. The parties have stipulated to the amount of Plaintiff's damages. Dkt. No. 82. Therefore, the only remaining issue is whether Plaintiff's damages flowed naturally and probably from Defendants' actions. Under the Agency Contract, Wisconsin law applies to this issue. *See* dkt. no. 54-1 at 3–4.

Under Wisconsin law, damages for breach of contract "must flow directly and necessarily from the breach of contract, and must be reasonably foreseeable at the time the contract was made as a probable result of the breach." *Reiman Assocs., Inc. v. R/A Advertising, Inc.*, 306 N.W.2d 292, 320 (Wis. App. 1981) (citing *Hadley v. Baxendale*, 9 Exch. 341, 156 Eng. Rep. 145 (1854)). The breach of contract must be a "substantial causative factor" in Plaintiff's damages, but there can be more than one substantial causative factor in a given case. *Merco Distrib. Corp. v. Commerical Police Alarm Co.*, 267 N.W.2d 652, 654–55 (Wis. 1978). "The phrase 'substantial factor' denotes that the defendant's conduct has such an effect in producing the harm as to lead the trier of fact, as a reasonable person, to regard it as a cause, using that word in the popular sense." *Id.* at 654 (citing *Milwaukee & Suburban Trans. Corp. v. Royal Transit Co.*, 139 N.W.2d 595 (Wis. 1966)).

As an initial matter, the Court concludes that Plaintiff's damages were reasonably foreseeable. *See Reiman Assocs.*, 306 N.W.2d at 320. Defendants breached the Agency Contract by impermissibly binding Plaintiff to a contract to insure the Restaurant, and there

is little doubt that one of the primary protections of restaurant insurance is compensation in case of a fire. In committing Plaintiff to the contract with the Insureds, it was reasonably foreseeable that Plaintiff would have to compensate the Insureds for damages to the Restaurant, particularly those arising from circumstances common to the restaurant industry such as fire damage.

Additionally, the Court concludes that Defendants' breach of contract was a substantial factor causing Plaintiff's damages. Defendants argue that because Plaintiff could have cancelled the contract with the Insureds prior to the fire, Plaintiff should have mitigated in that manner, and Defendants cannot now be held to account for the damage. However, this argument ignores a key fact: Plaintiff would not have been required to pay the Insureds anything had Defendants not impermissibly bound Plaintiff to the insurance contract for the Restaurant. Mitigation is an affirmative defense that might lessen the amount Defendants' are liable for, but mitigation does not effect whether Defendants' actions caused Plaintiff's damages. Although Defendants' breach of contract was only one link in the chain of causation, it substantially contributed to Plaintiff's damages, and Wisconsin law allows for multiple "substantial factors." *See Merco Distrib.*, 267 N.W.2d at 655.

In short, the Court concludes that there is no genuine issue of material fact that Defendants' breach of contract caused Plaintiff's damages under Wisconsin law. The Court **GRANTS in part** summary judgment in Plaintiff's favor on this issue. However, there remains a genuine issue of material fact as to Plaintiff's mitigation of damages, and Defendants are entitled to present this to a jury. *See* dkt. no. 56-1 at 13–16 (question as to when Plaintiff could have cancelled Insureds' policies).

### B. INDEMNIFICATION

Defendants challenge the application of the Liability Order as applied to Plaintiff's claim for indemnification, as well as Defendants' counterclaim for indemnification. The Agency Contract's indemnity clause provides as follows:

> E. Indemnification
>
> 1. The Company shall indemnify and hold the Agent harmless from all civil liability, including attorney fees and costs of investigation and defense, arising as a direct result of:
>
>> a. A company error, act. or omission, except to the extent the Agent has caused such error, act or omission.
>> . . .
>
> 2. The Agent shall indemnify and hold the Company harmless from all liability arising out of the Agent's error, act or omission except to the extent the Company has caused such error, act or omission.

Dkt. No. 1-1 at 3. In the Liability Order, the Court concluded that the indemnification provision is valid and enforceable. Dkt. No. 73 at 15. However, as the issue of causation remained an open question, the Court did not expressly rule that either party was entitled to indemnification.

Indemnification provisions are interpreted as any other contractual provision, applying the literal meaning of their language when they are unambiguous. *Farm Credit Servs. of N. Cent. Wis. v. Wysocki*, 627 N.W.2d 444, 448 (Wis. 2001) (general contract interpretation); *Herchelroth v. Mahar*, 153 N.W.2d 6, 8–9 (Wis. 1967) (specific application to indemnity clauses). The Agency Contract's indemnity clause requires that the agent—in this case, Defendants—indemnify Plaintiff "from all liability arising out of the Agent's . . . act except to the extent the Company has caused such . . . act[.]" Dkt. No. 1-1 at 3. In this case, the liability at issue arises from Defendants' impermissible binding of Plaintiff to the

9

insurance contract with the Insureds. Defendants bound this risk without any input from Plaintiff or any of its agents. Dkt. No. 73 at 14. As such, the Court concludes that Plaintiff did not cause Defendants' actions giving rise to liability in any way. Therefore, indemnification in Plaintiff's favor is appropriate, indemnification in Defendants' favor is not appropriate, and the Court **GRANTS** Plaintiff summary judgment as to indemnification.

## IV. CONCLUSION

For the reasons discussed herein, Plaintiff's Supplemental Motion for Summary Judgment [Dkt. No. 88] is **GRANTED in part**. Plaintiff is **GRANTED** summary judgment on Defendants' counterclaim in its entirety. As to Plaintiff's claim for breach of contract, the Court **GRANTS** summary judgment as to causation but concludes that a genuine issue of material fact remains as to mitigation of damages.

IT IS SO ORDERED this 27th day of March, 2012.

_____
LARRY J. McKINNEY, JUDGE
United States District Court
Southern District of Indiana

Distribution to:

Philip Edward Kalamaros
HUNT SUEDHOFF KALAMAROS
pkalamaros@hsk-law.com

Peter A. Schroeder
NORRIS CHOPLIN & SCHROEDER LLP
pschroeder@ncs-law.com